UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

04-20262

CASE NO. _____

*Emergency*

LAKE WORTH FOR GLOBAL JUSTICE, INC.,

Plaintiff,

v.

CITY OF MIAMI; JOE ARRIOLA, in his official capacity as the City Manager of the City of Miami; JOHN TIMONEY, in his official capacity as the Chief of Police for the City of Miami Police Department; WILLIAM BRYSON, in his official capacity as the Chirf of the Fire Rescue Department of the City of Miami,

Defendants.
_____/



CIV-GRAHAM

MAGISTRATE JUDGE GARBER

NIGHT BOX FILED
FEB 04 2004
CLARENCE MADDOX
USDC / SDFL / MIA



FILED by ___ D.C.
INTAKE
FEB 04 2004
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. MIAMI

*Emergency*

**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF FOR VIOLATION OF
CIVIL RIGHTS: 42 U.S.C. § 1983 AND FIRST AMENDMENT**



## JURISDICTION AND VENUE

1.      This action seeks declaratory relief, injunctive relief and damages, pursuant to 42 U.S.C. §1983, for ongoing and threatened injury to the First Amendment rights of individuals and organizations engaged in lawful expressive activity within the City of Miami. This Court has jurisdiction over plaintiff's claims pursuant to 28 U.S.C. §§1331 and 1343 and the Declaratory Judgment Act, 28 U.S.C. §§2201 and 2201.

2.      Venue is proper in the Southern District of Florida, Miami Division, under 28 U.S.C. §1391(b). All parties reside in the Southern District and all of the acts or omissions complained of herein have occurred or will occur in this district.

## INTRODUCTION

3.      The City of Miami operates a permit scheme for expressive activity in public fora that is both an unlawful prior restraint and an unreasonable time, place and manner regulation. It imposes the requirement of a permit for protected expression, but is absolutely devoid of any standards to guide the decision of whether and under what conditions a permit will issue. The absence of any standards means that the ordinance vests public officials with unbridled discretion and invites content-based decisions based on the nature of the speaker. This is a forbidden basis on which to rest a permit scheme that imposes a license on protected speech. For this reason, the current versions of the Miami ordinances should be invalidated as violating the First Amendment.

## PARTIES

4.      Plaintiff Lake Worth for Global Justice, Inc. (Group) is an incorporated association in the state of Florida, and is an activist collective committed to taking action for social justice. Plaintiff is located in Lake Worth, Florida. Plaintiff participated as a collective in the protests against the Free Trade Area of the Americas (FTAA) in Miami, in November 2003, and continues to be

1

engaged in the post-FTAA demonstration issues. It is involved in organizing around ongoing economic justice issues arising in Miami. During the recent FTAA protests in south Florida this past November, members of the Group were stopped in Miami by the police, detained and searched. Members of the Group participated in various demonstrations during the FTAA and were subject to orders to disperse when they engaged in lawful activities, including the events outside the amphitheater at Bayfront Park following the AFL-CIO sponsored march on Thursday, November 20, 2003, and the jail solidarity vigil and rally on November 21, 2003. Both events were the subject of orders to disperse, without proper notice to disperse, and police use of less-lethal weapons, tear gas and concussion grenades. The Group observed these police tactics. In addition, individuals with whom the Group regularly works in the global justice movement were arrested in the anti-FTAA protests solely for being a part of public demonstrations or failure to obey an order to disperse. Several persons who assisted the Group to make the large puppets used in the Miami anti-FTAA demonstrations were also arrested. The Group intends to participate in protesting the police actions at the FTAA and, specifically, plans to engage in lawful protests outside City Hall, where the Civilian Investigation Panel (CIP) is scheduled to hear testimony from Police Chief Timoney on Thursday night, February 5, 2004. Declaration of Cara Jennings (Jennings Dec.) at ¶ 1 attached hereto as Exhibit 1.

5.   Defendant City of Miami (City) is a municipal entity, organized under the laws of the State of Florida with the capacity to sue and be sued. It is the legal and political entity responsible for the actions of the City Manager and the Miami Police Department (MPD), which is a City department, and the officers and employees of these entities. The City is sued in its own right and on the basis of the acts of its officers, employees, and agents, which were taken pursuant to the City custom and policy. At all times relevant herein, the officers, employees, and agents of the City were acting under

color of state law.

6.      Defendant Joe Arriola (Arriola) is the City Manager for the City of Miami. He is the individual charged under the City of Miami Code, Section 54-3 (2003) (Miami Code) with the responsibility to approve permits for special events/festivals under Miami Code §54-3 and to issue permits pursuant to Miami Code §54-6. He is sued in his official capacity.

7.      Defendant John Timoney (Timoney) is the Chief of Police for the Miami Police Department. He is the public official responsible for the enforcement of Miami Code §54-2, prohibiting obstruction of free passage on sidewalks; for deciding whether to issue a permit pursuant to Section 54-3, requiring a license from the government to obstruct in any manner, or close a street or sidewalk; for deciding whether a permit will issue pursuant to Section 54-6, requiring a permit for any "procession or parade" on a street; and for enforcing Section 54-6.1, defining the terms "parade" and "public assembly" and purporting to regulate the manner of participation in these First Amendment expressive activities. He is sued in his official capacity.

8.      Defendant William Bryson (Bryson) is the Chief of the City of Miami's Fire-Rescue Department. He is the public official responsible for deciding whether to issue a permit pursuant to Section 54-3, requiring a license from the government to obstruct in any manner, or close a street or sidewalk. He is sued in his official capacity.

9.      At all times mentioned herein, all City officers, employees, and agents were acting pursuant to authority delegated or conferred by defendant City of Miami and, in doing or failing to do the things complained of herein, were acting within the scope of that authority.

10.     At all times mentioned herein, in doing or failing to do the things complained of, defendants and their officers, employees, and agents acted pursuant to the official policy, practice, or

custom of the City of Miami.

## STATEMENT OF FACTS

**Plaintiff's Anticipated Expressive Activities:**

11.     Plaintiff, the Group, is an incorporated association in the state of Florida, which is an activist collective committed to taking action for social justice. Jennings Dec. at ¶ 1. The Group has planned to engage in lawful expressive activities outside Miami City Hall on the evening of February 5, 2004, to express opposition to defendant Timoney's tactics and statements during and in response to the recent FTAA protests in Miami in November 2003. *Id.* at ¶ 1. Timoney is expected to testify before a scheduled hearing of the Miami independent police review panel, the Civilian Investigation Panel (CIP), held at the City Hall. The Group wants to participate in a protest outside City Hall during the entire time of the hearings, which are scheduled to begin at 5 p.m. and last for several hours. *Id.* at ¶ 2. Group members plan to stand on the sidewalk and the adjacent grassy area outside City Hall, as well as on the sidewalk adjacent to Bay Shore Drive, hold signs, and utilize the large paper-maché puppets that they bring to most protests. The Group held a press conference outside Miami City hall shortly before the FTAA meeting in November in this same general area. *Id.* at ¶ 3.

12.     In the wake of the police response to the FTAA demonstrations, various individuals and organizations came together to form a coalition to protest the police tactics used to break up demonstrations and arrest anti-FTAA protestors. The Group expects that at least eight people will be present outside City Hall on the evening of February 5th and that they will, by standing in this area, possibly block a portion of the sidewalk, obstructing pedestrian passage on it. *Id.* at ¶ 4. It plans to stand outside City Hall for more than 30 minutes as the previous hearing by the CIP regarding the FTAA protests lasted for several hours and the hearing on February 5th is likely to last a similar length

4

of time. *Id.* Some members of the Group also plan to stand on the sidewalk adjacent to Bay Shore Drive to reach the larger public with their message of opposition to Timoney and the police tactics used against the anti-FTAA demonstrators.

13.  The Group has not filed for a permit for the February 5th demonstrations outside the CIP meeting at City Hall and, on information and belief, understands that no other group has filed for a permit for this demonstration. *Id.* at ¶ 5. The Group is aware of the Miami Code sections requiring a permit and does not know how long in advance of this event it should have filed. The Group also understands that a condition of obtaining a permit is that it agree in advance to assume the risk and all liability arising from the permitted activities. The Group is unwilling to do this and is concerned that, if it agreed to this requirement, it will be held financially responsible not only for any intentional acts its members engage in as part of the Group's plan, but for the negligent and intentional acts of participants in the protest who act outside of the agreed upon expressive activities, as well as the negligent and intentional acts of possible counterdemonstrators and the police. *Id.* at ¶ 5. The Group intends to engage in other demonstrations and expressive activities in the City of Miami in the coming weeks and months as part of its anti-globalization and social justice work. The Group anticipates that some of these expressive activities will be targeted to the ongoing campaign to redress the police abuse during the FTAA meeting in November 2003. *Id.* at ¶ 7.

**The Miami Code Provisions:**

14.  The following sections of the Miami Code are challenged in this action:

   a.   **Miami Code Sec. 54-2: "Obstruction of free passage on sidewalks, etc."**

Miami Code Section 54-2 states an intent, *inter alia*, "to eliminate the obstruction of free passage over, on or along a street or sidewalk, which obstruction results from the manner in which a

person or number of persons shall stand, loiter or walk on said street or sidewalk." Miami Code Section§ 54-2(a). The Code makes it "unlawful for any person or any number of persons to so stand, loiter or walk upon any street or sidewalk in the city so as to obstruct free passage over, on or along said street or sidewalk after a request by a law enforcement officer to move on so as to cease blocking or obstructing free passage thereon." Miami Code § 54-2(b). This section applies "only when a person or number of persons shall stand, loiter or walk on a street or sidewalk so as to obstruct free passage and shall refuse to obey a request by an officer to move on; mere refusal to move on after a law enforcement officer's request to move on is not enough to support the offense. There must be an actual blocking of free passage over, on or along said street or sidewalk. Miami Code § 54-2(c). There is no definition of actionable obstruction.

    **b.**    **Miami Code Section 54-3 *et seq.* "Permit required to obstruct or close street or sidewalk or impede traffic; fees; waiver of fees."**

Miami Code Sections 54-3 through 54-6 set forth the City's permit requirements for engaging in all expressive activities in public fora. Miami Code Section 54-3 mandates that:

> (a) No person shall obstruct, close or cause to be obstructed or closed any street or sidewalk in this City or impede the general movement of vehicular or pedestrian traffic without first having obtained a permit from both the police and fire-rescue departments. In the case of special events and festivals, an additional permit must also be obtained prior to the event/festival from the department of public works. . . . [Permits] shall issue . . . only after approval . . . has been granted by the city manager . . . said approval contingent upon favorable recommendation by said departments for the issuance of said permits.

There is no specific advance time by which the application must be submitted to the Chief of Police.

Miami Code Section 54-3 (c) necessitates that:

"a condition precedent to the issuance of any such permit shall assume all civil liability for his acts of omission or commission and shall, further, hold the city harmless <u>for any acts arising or resulting from the issuance of said permit and any omissions or commissions on the part of the city</u>. (Emphasis supplied.)

The Miami Code imposes an even more onerous assumption of liability in Section 54-6(e). This portion of the Miami Code states: "By applying for and being granted such permit, the applicant shall assume all civil liability arising from conditions, restrictions, or omissions on the face of the permit." In addition, this section requires an applicant to submit proof of insurance in "an amount not less than $50,000.00 per person, $100,000.00 aggregate, . . . <u>whichever is greater</u>. . . ." Miami Code § 54-3(c). The Code also establishes fees for filing an application and for the use of public fora for "special events;" however the fees may be "waived or reduced" at the total discretion of the city if it decides that "a waiver or reduction is in the city's best interest." Miami Code § 54-3(d).

Miami Code Section 54-6(a) makes the permit requirement applicable to any "procession or parade" unless it is conducted by a federal or state government military or paramilitary organization. The Code provides no set time by which an application for a permit must be filed, advising only that it be filed "sufficiently in advance of the proposed parade or procession to allow adequate arrangements to be made for the proper policing of [the procession or parade]." Miami Code § 54-6(b). There is no exception for "spontaneous speech" in the Miami Code.

      **c.**      **November 2003 Amendment to Chapter 54 of the Code "Streets and Sidewalks"**

7

On the eve of the FTAA demonstrations in November 2003, defendants adopted an ordinance amending Chapter 54 of the Miami Code to add §54.6.1. This measure added a definition of term "parade" to mean "a coordinated movement of seven (7) or more pedestrians or vehicles upon the streets, within the city with an intent of attracting public attention that interferes with or has a tendency to interfere with the normal flow or regulation of traffic upon the street." Section 54-6.1(a). The supplemental ordinance also defined the term "public assembly" to mean "a gathering outside a structure of more than eight (8) persons for a common purpose at a public place that continues in existence for more than thirty (30) minutes." *Id.* Section 54-6.1(b) sets forth 10 limitations on materials and items that may be possessed by a participant in a parade or public assembly, as those terms were defined in the preceding section, including various weapons, the types of materials for signs and for materials to which to post the signs, etc.

### d.      The Penalty for a Violation of the Code

The Code makes a violation of any of its sections a misdemeanor, punishable by a fine of up to $500 or imprisonment at "hard labor on the streets or other works of the city for not more than 60 days," or both. Miami Code §1-13.

### FIRST CLAIM FOR RELIEF

### VIOLATION OF THE FIRST AMENDMENT PURSUANT TO 42 U.S.C. §1983

15.     The allegations of paragraphs 1 through 14 are incorporated into the First Claim for Relief as though fully set forth herein.

16.     Miami Code Section 54-2 violates the First Amendment as an overbroad restriction on the use of public fora that prohibits all "obstruction" of free passage on public sidewalks and would, necessarily, impose the risk of punishment for engaging in protected expressive activities in these fora,

including picketing and protesting.

17. Miami Code Sections 54-3 and 54-6 violate the First Amendment because they are impermissible prior restraint on expression in public fora. The ordinances impose an advance filing requirement for a license from the government to speak without providing adequate standards to guide the exercise of discretion by public officials and without the necessary procedural safeguards to protect against content-based decision. They allow, *inter alia*, for officials to establish what constitutes a "sufficient" advance filing for a permit for protected expressive activities in public fora on an ad hoc basis and lacks any standards for determining whether to grant or deny a permit request.

18. Miami Code Sections 54-3 and 54-6 also violate the First Amendment because they do not constitute a content-neutral reasonable time, place or manner restriction. The application of the ordinances may depend on the content of the speech and its terms are not narrowly drawn to avoid restricting more speech than is necessary to further the City's compelling interests in regulating speech in public fora. Moreover, because Miami's Code requires a license to engage in virtually any speech activities in archetypal public fora in the City and does not provide for "spontaneous" expressive activities in response to timely events, it leaves no ample alternatives for communication.

19. Miami Code Section 54-3(c) violates the First Amendment as it imposes an unconstitutional condition on the issuance of a permit to engage in protected expression in traditional public fora in the City by requiring permittees to assume, in advance of their occurrence, all liability not only for their own acts and omissions, but for the potentially unauthorized acts and omissions of third parties relating to the expressive activity, and the acts and omissions of all City employees, which would include the violation of civil rights by the police.

20. Miami Code Section 54-3(d)(3) is unconstitutional as it vests public officials with the

authority to waive or reduce fees imposed on the exercise of First Amendment rights in public fora on an inherently and unconstitutionally vague criterion: " the city's best interest."

21. Miami Code Section 54-6.1 is unconstitutional in that it does not meet the requirements of a reasonable time, place, or manner regulation. It is also unconstitutional as it has been applied by the Miami Police Department to restrict "public assemblies" of eight or more persons assembled for a "common purpose" outside a structure to a maximum of 30 minutes in length.

22. The ordinance and acts by defendants set forth above have violated the Group's rights to freedom of speech, freedom of assembly, freedom of association and freedom to petition the government for redress of grievances, all rights protected by the First Amendment and made applicable to the states and local government by 42 U.S.C. §1983. The acts complained of herein were directed toward intimidating the Group, chilling the exercise of these protected expressive rights by, among other means, deterring the Group and others from associating in the lawful exercise of their constitutional rights.

23. As a consequence of these actions, the Group and others were impeded in their efforts to carry out the rallies and march in conjunction with the FTAA and are impeded in their ability to carry out the demonstrations and other activities to protest globalization and police abuse, among other issues, and beginning with the upcoming demonstration planned in conjunction with the CIP hearing on February 5, 2004, at which defendant Timoney is scheduled to appear. They are at risk of not being able to communicate their message if the ordinances continue to be enforced. Accordingly, the Group has and will suffer injury as a result of defendants' unconstitutional policies and enforcement conduct.

24. There is an actual controversy now existing between the Group and the defendants concerning the permitting scheme in Miami, including whether and under what conditions a permit

will issue. The Group seeks a judicial determination of its rights and duties and a declaration as to defendants' obligations regarding lawfully expressive activities.

25. The Group plans to engage in expressive activity in the City of Miami in the immediate future. As a result of defendants' unconstitutional ordinance regulating core speech, the Group reasonably believes that future demonstrations will result in constitutional violations similar to those described above. Absent relief from this Court, the Group will suffer irreparable harm. Its speech and petition rights – and in particular its ability effectively to convey its message to public – will be violated. The Group faces an actual and concrete threat of imminent future violation of its First Amendment free speech rights.

## PRAYER FOR RELIEF

Plaintiff requests relief as follows:

1. A temporary restraining order, preliminary and permanent injunction, enjoining defendants, its officers, agents and employees, from enforcing Miami Municipal Code Sections 54-2, 54-3, 54-6 and 54-6.1.

2. For a declaration that defendants' challenged ordinances violate plaintiff Group's rights to free speech, assembly, association and to petition the government for redress of grievances, under the First Amendment to the United States Constitution.

3. For costs of suit pursuant to 42 U.S.C. §1920 and 42 U.S.C. §1988.

4. For attorneys fees pursuant to 42 U.S.C. §1988.

5. For such other relief as this Court deems just and proper.

Dated: February 3, 2004                          Respectfully submitted,

                                                 By: _____

11

ROBERT W. ROSS, JR., FBN 921660

LAW OFFICES OF ROBERT W. ROSS, JR., P.A.
601 South Federal Highway
Lake Worth, Florida 33460
T. 561 251-4896; F. 561 241-2790


Carol A. Sobel (Pro Hac Vice)
LAW OFFICE OF CAROL A. SOBEL
429 Santa Monica Boulevard, Suite 550
Santa Monica, California 90401
T. 310 393-3055; F. 310 393-3605


Andrea Costello   FBN 532991
Alice K. Nelson   FBN 211771
SOUTHERN LEGAL COUNSEL, INC.
1229 N.W. 12th Avenue
Gainesville, Florida 32601
T. 352 271-8890;   F. 352 271-8347

## VERIFICATION

I, CARA JENNINGS, declare:

1. I am a member of the Plaintiff Lake Worth for Global Justice, Inc. I submitted a declaration in support of the temporary restraining order that sets out the facts set forth in the Complaint and in the Statement of Facts in the Memorandum. I have personal knowledge of those facts, except for the single fact based on information and belief: to wit, that no other group involved in the scheduled protest of Chief Timoney's appearance before the Civilian Investigation Panel on Thursday night, February 5th, has applied for a permit pursuant to Code section 54. As to that fact, I believe it to be true.

2. I have read the Complaint filed in this action and am familiar with the factual matters set forth in the pleading. I verify that these facts are true and correct.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct. Executed on February 2, 2004 at Lake Worth, Florida.

_____
CARA JENNINGS

**EXHIBIT 1**

JS 44
(Rev 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
Lake Worth for Global Justice, Inc.

**DEFENDANTS**
City of Miami, et al.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF: Palm Beach
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT: Dade
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

04CV20262 DLG

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Southern Legal Counsel, Inc.
1229 N.W. 12th Ave.
Gainesville, FL 32601 (352) 271-8890

ATTORNEYS (IF KNOWN) Alejandro Vilarello
City of Miami Attorney's Office
444 S.W. 2nd Avenue, Suite 945
Miami, FL 33133 (305) 416-1800

**(d)** CIRCLE COUNTY WHERE ACTION AROSE: DADE, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

**II. BASIS OF JURISDICTION** (PLACE AN 'X' IN ONE BOX ONLY)
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (For Diversity Cases Only)

**IV. ORIGIN** (PLACE AN 'X' IN ONE BOX ONLY)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN 'X' IN ONE BOX ONLY)

[Nature of Suit categories shown as checkboxes — 440 Other Civil Rights checked]

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Civil rights action pursuant to 42 U.S.C. Section 1983 for deprivation of rights under the U.S. Constitution

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
JURY DEMAND: ☐ YES ☒ NO

**VIII. RELATED CASE(S) IF ANY** N/A

DATE: 02/02/2004
SIGNATURE OF ATTORNEY OF RECORD: Robert W. Ross, Jr.

FOR OFFICE USE ONLY

$150 W 895963
02/04/04